IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


MICHELLE JANSEN,                                    05-CV-385-BR

                        Plaintiff,          OPINION AND ORDER

v.

EXPERIAN INFORMATION SOLUTIONS,
INC., a foreign corporation,
EQUIFAX INFORMATION SERVICES, LLC,
a foreign corporation, TRANS
UNION, LLC, a foreign corporation,
and NCO FINANCIAL SYSTEMS, INC., a
foreign corporation.

                        Defendants.


JUSTIN M. BAXTER
MICHAEL C. BAXTER
ROBERT S. SOLA
Baxter & Baxter, LLP
8835 S.W. Canyon Lane, Suite 130
Portland, OR 97225-3429
(503) 297-9031

            Attorneys for Plaintiff


1  - OPINION AND ORDER

**J. ANTHONY LOVE**
**KEASHA ANN BROUSSARD**
**PHYLLIS B. SUMNER**
King & Spalding, LLP
1180 Peachtree Street NE
Atlanta, GA 30309
(404) 215-5913

**JEFFREY M. EDELSON**
Markowitz Herbold Glade & Mehlhaf, PC
1211 S.W. Fifth Avenue, Suite 3000
Portland, OR 97204
(503) 295-3085

      Attorneys for Defendant Equifax Information Services

**BROWN, Judge.**

This matter comes before the Court on Plaintiff Michelle Jansen's Motion (#159) for Attorney Fees, Motion (#191) to Supplement Attorney Fees, and Second Motion (#206) to Supplement Attorney Fees.  In her Motions, Plaintiff requests the Court to award attorneys' fees in the amount of $310,919.75 against Defendant Equifax and also requests the Court to tax $13,894.335 in costs against Equifax as set out in her Bill of Costs (#165).

For the reasons that follow, the Court **GRANTS in part** and **DENIES in part** Plaintiff's Motions (#159, #191, #206) for Attorney Fees and awards attorneys' fees to Plaintiff in the amount of **$298,959.75**.  The Court also **GRANTS in part** and **DENIES in part** Plaintiff's Bill of Costs and awards costs to Plaintiff in the amount of **$12,338.07.**

2  - OPINION AND ORDER

**BACKGROUND**

Plaintiff's efforts to establish that Defendant Equifax and three co-defendants (Experian Information Solutions, Inc.; Trans Union, LLC; and NCO Financial Systems, Inc.) each separately violated her rights under the Fair Credit Reporting Act (FCRA), 18 U.S.C. §§ 1681, *et seq.*, have been ongoing for five years. Plaintiff reached separate confidential settlement agreements with NCO in 2007, Trans Union in 2008, and Experian in 2009. According to Plaintiff's counsel, each settlement involved payment of an undisclosed lump sum to Plaintiff and her attorneys. Plaintiff and counsel had a contingent attorney-fee agreement.

Although Plaintiff and Equifax prepared for a jury trial scheduled for March 8, 2010, they too reached a settlement that led to the entry of a Stipulated Judgment (#152) against Equifax in the amount of $275,000 "plus reasonable attorney's fees to be decided by the Court." The Judgment also sets a $325,000 ceiling on the amount of fees and costs that Plaintiff may seek or that the Court may award.

On April 21, 2010, Plaintiff filed her Motion for Attorney Fees and her Bill of Costs. On May 7, 2010, Equifax filed its Motion to Compel Production of Settlement and Attorney Fee Information to Prevent Double Recovery. On May 20, 2010, Equifax filed its opposition to Plaintiff's Motion for Attorney Fees. On

3 - OPINION AND ORDER

July 6, 2010, Plaintiff filed her Motion to Supplement Attorney Fees.

On August 4, 2010, the Court heard oral argument on Equifax's Motion to Compel and granted in part and denied in part Equifax's Motion as set out in the Court's Order issued on August 6, 2010. In particular, the Court ordered:

> In this adversary context, therefore, it is appropriate for Equifax to have discovery access to the records of Plaintiff's counsel from which counsel developed the statement of "net" hours for which he contends he should be compensated for the prosecution of the claim against Equifax. It is also appropriate for Equifax to have an opportunity to make a record based on the discovery that shows any potential for what Equifax calls "double recovery" of attorneys' fees, which the Court believes is more precisely a question of determining those hours of counsel's time that should be used in the lodestar calculation to determine a reasonable award of attorneys' fees and costs against Equifax.

The Court permitted Equifax an opportunity to file a new motion to compel after reviewing Plaintiff's production and an opportunity to file a supplemental opposition to Plaintiff's Motion for Attorney Fees. Equifax declined both opportunities.

On November 5, 2010, Plaintiff filed her Second Motion for Supplemental Attorney Fees.

### PLAINTIFF'S MOTION (#159) FOR ATTORNEYS' FEES

#### Standards

Generally the Ninth Circuit has adopted a lodestar/multi-plier approach for assessing the amount of reasonable attorneys' fees. *Grove v. Wells Fargo Fin. Cal., Inc.*, 606 F.3d 577, 582 (9th Cir. 2010). *See also Gates v. Deukmejian,* 987 F.2d 1392, 1397 (9th Cir. 1993). The party seeking an award of fees bears the burden to produce evidence to support the number of hours worked and the rates claimed. *United Steelworkers of Am. v. Retirement Income Plan for Hourly-rated Employees of* Asarco, *Inc.*, 512 F.3d 555, 565 (9th Cir. 2008). See *also Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000). When determining the appropriate number of hours to be included in a lodestar calculation, the district court should exclude hours 'that are excessive, redundant, or otherwise unnecessary.'" *McKown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009)(quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). The district court has "considerable discretion" in determining the reasonableness of attorneys' fees. *Webb v. Ada County, Idaho,* 195 F.3d 524, 527 (9th Cir. 1999).

To determine the lodestar amount, the court may consider the following factors:

> (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform

> the legal service properly; (4) the
> preclusion of other employment by the
> attorney due to acceptance of the case;
> (5) the customary fee; (6) whether the fee is
> fixed or contingent; (7) time limitations
> imposed by the client or the circumstances;
> (8) the amount involved and the results
> obtained; (9) the experience, reputation, and
> ability of the attorneys; (10) the
> "undesirability" of the case; (11) the nature
> and length of the professional relationship
> with the client; and (12) awards in similar
> cases.

*Fischel v. Equitable Life Assur. Soc'y of* U.S., 307 F.3d 997,

1007 n.7 (9th Cir. 2002).  See *also Kerr v. Screen Guild Extras,*

*Inc.*, 526 F.2d 67, 70 (9th Cir. 1975).  "The Court need not

consider all . . . factors, but only those called into question

by the case at hand and necessary to support the reasonableness

of the fee award."  *Cairns v. Franklin Mint Co.*, 292 F.3d 1139,

1158 (9th Cir. 2002)(quoting *Kessler v. Assocs. Fin. Servs. Co.*

*of Haw.*, 639 F.2d 498, 500 n.1 (9th Cir. 1981)).

## Discussion

Plaintiff initially requests the Court to award attorneys'

fees in the amount of $288,199.75 for work performed up to

April 21, 2010, and costs in the amount of $13,894.35.  To

support Plaintiff's Motion, Plaintiff's counsel provided, *inter*

*alia*, the Declarations of Paralegal Kachelle Baxter, Attorneys

Justin Baxter and Robert Sola, over fifty pages of billing

entries, and an expert opinion from Phil Goldsmith.

I.    **Reasonable Hourly Rates.**

Plaintiff's counsel seek the following hourly billing rates to compensate them for work performed in this matter with respect to Equifax:  $400 per hour for Attorney Robert Sola, $295 per hour for Attorney Justin Baxter, and $140 per hour for Paralegal Kachelle Baxter.

A.    **Attorney Robert Sola.**

Sola has been practicing law for roughly 25 years (*i.e.*, since 1984) and has focused on consumer law since forming his own practice in 1995.  Sola has been representing clients in FCRA matters for 15 years, and his practice in the past eight years has consisted of FCRA cases exclusively.  Sola has settled scores of FCRA cases with creditors and collection agencies and has obtained numerous verdicts in his clients' favor including two multi-million dollar verdicts.  Sola notes a Florida state court approved his request for an hourly fee of $400 in a FCRA case in which he secured a jury verdict of $219,000 for actual damages and a $2.7 million award for punitive damages.

Sola has established a national reputation in FCRA matters, has been associated on numerous FCRA cases across the country, and has litigated FCRA cases in more than ten states.  Sola was named Trial Lawyer of the Year in 2003 for his work in FCRA cases.  Sola also routinely gives presentations on FCRA and consumer-law topics to regional and national attorney

7  - OPINION AND ORDER

associations.

Equifax, nevertheless, contends Sola's request for $400 per hour is unreasonable and the Court should reduce Sola's hourly rate to $244, the average billing rate for attorneys in Portland, Oregon, as set out in the 2007 Economic Survey conducted by the Oregon State Bar [Oregon 2007 Survey].  Equifax argues the Court should at most award Sola a rate of $283 per hour, the average Portland billing rate for "business/corporate litigation" attorneys.  Equifax asserts the Court should not give great weight to the fact that Sola was awarded fees at a rate of $400 per hour in the Florida matter, especially in light of the fact that the award in that case was nearly $3 million in contrast to Plaintiff's settlement for $275,000 in this matter.

The Oregon 2007 Survey lists $244 as the *average* billing rate for Portland attorneys generally and $283 as the *average* billing rate for Portland business or corporate litigators. Those rates, however, are not necessarily reflective of a practitioner's experience.  Sola's Declaration establishes he is an attorney that is far above average in terms of his experience with FCRA matters and points out that he has practiced law for nearly 25 years, and the Court notes Equifax does not dispute Sola's experience or skill.  The Court is persuaded on this record that Sola has the skills, reputation, and experience to warrant a higher-than-average billing rate.

8  - OPINION AND ORDER

The Oregon 2007 Survey reflects the 75th percentile billing rate for business or corporate litigation is $337 per hour and the 95th percentile is $445 per hour.  The Oregon 2007 Survey also lists the 75th percentile billing rate for Portland practitioners with 21-30 years experience at $325 per hour and the 95th percentile billing rate at $399.  The Court has also reviewed the data from the Oregon 2002 Economic Survey.  The 2002 billing rate for Portland business or corporate litigators in the 95th percentile was $333 per hour.  When that rate is adjusted for inflation,[1] the 2005 billing rate would be approximately $360 and the 2006 billing rate would be approximately $375 per hour.  Ultimately Sola's rate of $400 per hour is $25-$40 above the 95th percentile rate for complex litigators before 2007 and is $45 below the 95th percentile rate for complex litigators in 2007.

In his Declaration in support of Plaintiff's Motion, Phil Goldsmith, an attorney-fee expert familiar with the work performed by Plaintiff's counsel, extensively surveys fee awards in Oregon and offers his opinion that Sola's hourly-rate request for $400 is reasonable in light of other awards to attorneys with similar experience.  Equifax does not challenge Goldsmith's

---

[1] The Court applied the average historical inflation rates for 2003 (2.27%), 2004 (2.68%), 2005 (3.39%), and 2006 (3.24%) to reach an estimate of the rates for counsel's work in 2005 and 2006.  The rates of inflation are available at: http://www.inflationdata.com/inflation/inflation_rate/historical inflation.aspx.

qualifications or provide any evidence to dispute Goldsmith's Declaration.

The Declarations of Sola and Goldsmith detail Sola's extensive experience with FCRA cases, his national reputation as a leading litigator in that area of the law, and his extensive success at litigating FCRA claims across the country. This experience places him among the top attorneys in his field in the Portland area.

Although Equifax also specifically contends Sola's rate should be adjusted downward to account for the work that he performed before 2007, the year in which the Oregon 2007 Survey was taken, the Court notes Sola performed work in this matter before, during, and after 2007. On this record the Court concludes compensation at $400 per hour represents a reasonable median hourly rate, and, therefore, Sola's $400 hourly rate does not need to be reduced for hours worked before 2007 nor increased for hours worked thereafter.

In summary, the Court concludes under the circumstances of this case that Sola's requested rate of $400 per hour is reasonable under the Oregon 2002 and 2007 Surveys when compared to practitioners with similar experience and expertise.

**B.    Attorney Justin Baxter.**

Baxter is a partner at the Portland law firm of Baxter & Baxter. He has practiced law in Oregon since 1999. Baxter

specializes in consumer-law litigation and identity-theft cases, including fair-credit reporting and unlawful debt-collection cases. Baxter is a former chair of the Oregon State Bar Consumer Law Section, has authored several publications on consumer law, and has delivered numerous lectures on consumer-law topics.

Equifax contends Baxter's requested rate of $295 per hour is excessive and should be reduced to $244, the average rate for Portland attorneys reported in the Oregon 2007 Survey. Equifax does not dispute Baxter's expertise nor counter Goldsmith's Declaration in which he contends Baxter's rate of $295 per hour is reasonable in light of Baxter's experience and expertise.

The Court concludes Baxter has demonstrated he is an above-average attorney in the field of consumer-law litigation. The Court notes the Oregon 2007 Survey lists the 75th percentile billing rate of Portland attorneys with ten to twelve years of experience at $290. The Oregon 2007 Survey also lists the 75th percentile billing rate for Portland attorneys in corporate or business litigation at $337 per hour. Based on these rates, Baxter's experience in FCRA matters, Goldsmith's opinion, and the fact that Baxter's work was performed in 2010 (three years after the Oregon 2007 Survey was conducted), the Court finds Baxter's requested hourly rate of $295 is reasonable under the circumstances.

11 - OPINION AND ORDER

### C.    Paralegal Kaschelle Baxter.

Kaschelle Baxter worked as a paralegal for Sola on this matter and a billing rate of $140 per hour is requested for her work.  Kaschelle Baxter attests she has extensive training in handling FCRA cases and has attended three two-day conferences on FCRA presented by the National Association of Consumer Advocates. She also acted as the sole paralegal in four FCRA matters that went to trial in this District.  Kaschelle Baxter is also in her second year of law school.

Equifax contends the requested rate for Kaschelle Baxter is excessive for a paralegal.  Equifax notes there is very little data on the rates charged for work performed by paralegals and suggests a reduction of Kaschelle Baxter's requested rate to $87 per hour is appropriate, which represents a proportional reduction similar to that suggested by Equifax for Sola's requested rate.

Goldsmith acknowledges in his Declaration that there is little data on paralegal billing rates.  Goldsmith, however, references a survey of commercial-litigation attorney-fee rates conducted by Forensic Accountant Serena Morones, which reflects the average rate for a Portland commercial-litigation paralegal in January 2008 was $154.[2]  Equifax does not offer any evidence

---

[2]  More information about Morones's survey, which she has conducted each year since 2002 and in which she has included her findings in 2002, 2004, 2006, and 2008, can be found at

to the contrary.

The Court, however, notes the billing rate requested for Kaschelle Baxter's work exceeds the billing rate for many attorneys in Oregon with fewer than three years experience. According to the Oregon 2007 Survey, the rates for attorneys in the 25th percentile in the Tri-County, Lower Valley, and Upper Valley regions of Oregon are $125-130.  In addition, the median billing rate for attorneys in southern Oregon is $140.  In light of these comparisons, the Court finds the rate of $140 per hour for Kaschelle Baxter's work is excessive and should be reduced to $100 per hour, a rate which is supported by Kaschelle Baxter's knowledge of FCRA matters and extensive experience in FCRA litigation.

## II.  Reasonable Hours Expended.

The "district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." *Hensley v. Eckerhart*, 461 U.S. 424, 436-37.

In her initial Motion for Attorney Fees, Plaintiff's counsel assert the following represents the hours reasonably expended on Plaintiff's action against Equifax:  648 hours by Attorney Robert Sola, 58.25 hours by Attorney Justin Baxter, and 84.4 hours by Paralegal Kachelle Baxter.

http://moronesyoung.com/our-services/attorney-fee-survey/.

13 - OPINION AND ORDER

Equifax contends the requested hours of Plaintiff's counsel are unreasonable and should be reduced on the following grounds: (1) numerous billing entries reflect time Plaintiff's counsel spent on claims against Defendants other than Equifax for which Equifax is not responsible, (2) Plaintiff's counsel billed for clerical or administrative tasks that are not compensable, (3) some of the billing entries of Plaintiff's counsel are too vague to be compensable, (4) Plaintiff refused to make appropriate settlement demands, (5) Plaintiff's counsel intentionally drove up hours and costs, and (6) Plaintiff's counsel achieved only limited success in this matter.

**A.    Time spent on claims against other Defendants.**

Equifax provides with its Response a document that contains over 200 billing entries by Plaintiff's counsel that, according to Equifax, cannot be identified as limited only to time spent on Plaintiff's claims against Equifax.  Because Equifax contends the Court cannot determine the method by which Plaintiff reduced its billing entries to account for only the time that Plaintiff's counsel spent on claims against Equifax or whether Plaintiff's counsel made any reduction of time at all, the Court should either grant Equifax's prior Motion (#167) to Compel in its entirety and consider the amounts that Plaintiff's counsel received in fees as part of the confidential settlement

agreements with the other Defendants[3] or the Court should apply
an "across-the-board" reduction in the number of hours expended
by Plaintiff's counsel.

On August 6, 2010, the Court issued an Order denying
Equifax's Motion to Compel with respect to Equifax's request that
the Court order disclosure of the amounts that Plaintiff's
counsel recovered in attorneys' fees from the other settling
Defendants to avoid a "double recovery."  The Court, however,
granted Equifax's Motion to require Plaintiff to "produce to
counsel for Defendant Equifax a complete copy of the source
records from which Plaintiff's counsel developed the 'net'
statement of hours necessarily expended and costs necessarily
incurred in the prosecution of Plaintiff's action against
Defendant Equifax."  The Court also granted Equifax the
opportunity to review those records; required it to confer with
Plaintiff's counsel if Equifax could not find support for
particular billing entries; and, in addition, granted Equifax the
opportunity to file a new motion to compel based on its review of
the source documents by September 17, 2010.  Equifax did not
file such a motion.  Moreover, the Court gave Equifax until
October 22, 2010, to supplement its May 21, 2010, opposition to
Plaintiff's Motion for Attorney Fees.  Equifax declined to do so.

---

[3] Equifax's Response was filed before the Court granted in
part and denied in part Equifax's Motion to Compel.

15 - OPINION AND ORDER

In its Notice (#205) Concerning Opposition to Plaintiff's Motion for Attorneys' Fees, Equifax stated it received Plaintiff's "source records" as ordered, reviewed those records, conferred with Plaintiff's counsel, and "does not intend to supplement its opposition."

In Plaintiff's Reply, Plaintiff's counsel states the billing entries submitted to the Court represent only the time expended on Plaintiff's claims against Equifax, and each entry that contains a general description of the task (*e.g.*, drafting the Complaint) has been properly adjusted to reflect only time reasonably apportioned to those claims.

The Court does not find any evidence in this record that undermines the Declaration of Robert Sola in which he attests he included in his billing records "only the amount of time that would have been expended if Equifax were the only Defendant."

Based on the Declarations of Plaintiff's counsel, their representations at oral argument, their billing records, Equifax's review of additional source records, and Equifax's decision not to renew its Motion to Compel or to supplement its Opposition to Plaintiff's Motion for Attorney Fees, the Court declines to reduce the number of hours asserted by Plaintiff's counsel as time expended only on Plaintiff's claims against Equifax.

16 - OPINION AND ORDER

**B.    Clerical or administrative tasks.**

Equifax contends the 2.5 hours that Kaschelle Baxter billed for the tasks of copying and organizing documents for discovery are not compensable because they are clerical or administrative in nature and constitute overhead that is reflected in the attorneys' hourly rates.  Plaintiff did not respond to this argument, and, in any event, the Court agrees with Equifax on this point.  Accordingly, the Court reduces Kaschelle Baxter's billing by 2.5 hours.

**C.    Billing entries that are vague or lack specificity.**

Equifax also contends "all of Plaintiff's counsel's non-specific time entries should be disallowed because they lack the requisite specificity from which the Court can determine the content of the work performed" and its reasonableness.  Equifax cites the following examples:  (1) Sola's time entries for sending or responding to emails without specifying the content of the emails and (2) Kaschelle Baxter's entry for 1.6 hours to "highlight errors on credit reports" without identifying the credit agency's reports that she was reviewing.  Although Equifax's Exhibit F to its Response identifies 21 billing entries for Kaschelle Baxter that allegedly lack specificity, Equifax does not identify any such billing entries for Sola.

The Court has reviewed Sola's 52 pages of billing entries in which Sola routinely includes the general subject matter of the

17 - OPINION AND ORDER

correspondence (including emails) reflected in his billing
entries.  The Court found only one billing entry from April 20,
2006, in which Sola billed six minutes to "[r]espond to email."
It is obvious, however, that Sola is responding to the email from
Equifax's counsel that he "reviewed" in the prior billing entry.
On this record the Court does not find any basis to reduce the
number of hours billed by Sola on the ground that his billing
entries lack specificity.

The Court has also reviewed the task descriptions and the
time allocated for each task in Kaschelle Baxter's billing
entries.  The Court finds only a single entry is sufficiently
vague to warrant a reduction in compensable hours:  On August 30,
2005, an entry for .3 hours is described as "Revise summary."
There is not, however, another contemporaneous record that shows
a summary in progress.  Thus, the Court reduces Kaschelle
Baxter's billing entries by .3 hours and finds her remaining
entries are reasonable.

   **D.  Plaintiff's unwillingness to settle.**

Equifax contends Plaintiff needlessly extended the time
required to resolve this matter because she refused to tender an
offer of settlement or to negotiate with Equifax in response to
its offers of settlement.  Thus, Equifax suggests the Court
should reduce the hours expended by Plaintiff's counsel by "25%
or more."

Equifax notes Plaintiff made a settlement demand of $140,000 in October 2005. At that time Equifax was represented by different counsel, and Equifax did not accept Plaintiff's offer. Equifax asserts it "inquired about settlement" in June 2007; made numerous inquiries of Plaintiff about settlement from October through December of 2007; and made offers of settlement to Plaintiff for $50,000, $100,000, $125,000, and $175,000. In May 2009 Equifax again made an offer of settlement for $135,000. Equifax further inquired about settlement in September 2009 and January 2010. Equifax contends Plaintiff did not make any settlement demands between June 2007 and February 2010 until Plaintiff finally made a demand that led to settlement of the case.

Plaintiff, in turn, reiterates the fact that she made an early offer of settlement in October 2005 to which Equifax did not respond for nearly two years. As the case progressed, Plaintiff's counsel concluded the value of the case far exceeded the initial offer of settlement. Plaintiff's counsel also contends it would have been imprudent to accept an offer of settlement in 2007 because the extensive discovery was still ongoing; *i.e.*, Plaintiff's counsel was working through the more than 5,400 pages of discovery and awaiting additional documents from Equifax concerning Plaintiff's credit reports. Plaintiff's counsel contends these documents revealed additional FCRA

violations that prompted Plaintiff to amend her Complaint to add
claims.  Plaintiff's counsel also state they were reviewing the
documents from Equifax carefully to determine whether Equifax's
FCRA violations were willful.

According to Plaintiff, Equifax's argument that Plaintiff's
counsel only delayed this matter in order to increase their fees
is baseless because Plaintiff's counsel had a contingency-fee
agreement with Plaintiff and actually risked bearing all of the
costs and receiving no compensation for their work.  Moreover,
Plaintiff's counsel point out that this matter has taken several
years to resolve because the relevant facts in the matter span
roughly 25 years, the discovery consisted of many thousands of
pages of documents that Defendants provided slowly, the fact and
expert witnesses in the matter were numerous, and Equifax's
offers of settlement were too low.

The Court notes Plaintiff and Equifax each went for long
periods during this matter without mutually exploring settlement.
The Court, however, does not find such delays unreasonable in
this case because of the long period over which discovery took
place, the volume of discovery produced, and the nearly 25-year
time-frame from which the relevant facts in this matter are
drawn.  In addition, although not decisive, Plaintiff's
settlements in 2007 with Defendant NCO Financial, in 2008 with
Defendant Trans Union, and in 2009 with Defendant Experian

20 - OPINION AND ORDER

demonstrate Plaintiff was willing to consider offers and to settle her claims.

The Court, therefore, concludes on this record that Plaintiff's alleged failure to make an offer of settlement during portions of this litigation is not a ground for finding the time spent by Plaintiff's counsel on this matter was unreasonable.

**E. Plaintiff's counsel needlessly incurred hours and costs.**

Equifax contends Plaintiff did not take depositions between October 2005 and June 2007, identify any expert witnesses during that time, nor file any discovery motions.  Equifax also notes Plaintiff did not take depositions of Equifax witnesses until 2009 and did not disclose her five experts until 2010.  For these reasons, Equifax contends the Court should conclude some of the hours expended by Plaintiff's counsel were unreasonable.

Plaintiff, in turn, reiterates her arguments concerning the length of discovery, the volume of documents produced, and the time it took to understand those materials before Plaintiff's counsel could depose Equifax witnesses.  For example, Sola states in his Declaration that among the thousands of pages produced by Equifax were 1,200 pages of "frozen scans," which were monthly "snapshots" of Plaintiff's credit history covering more than nine years.  With respect to those "frozen scans," Sola attested:

> Each scan contained a significant amount of data including plaintiff's identification information and all her credit information.

21 - OPINION AND ORDER

> I had to meticulously review each entry on
> each scan, and compare it with the preceding
> and following month's scans, to see if it was
> altered, removed, or if there were new
> entries appearing from month to month.  I
> also had to compare each scan with the other
> scans for the same month to see if they
> contained different information.  Much of the
> information was in code or had companies
> identified by a subscriber number.  I had to
> learn the meaning of the codes to understand
> the documents.  After I learned and
> understood the information in an Equifax
> document, I would then add the information to
> the Equifax summary of facts.

Sola also notes he was the only attorney billing time on

Plaintiff's behalf until trial preparation began in early 2010,

and, therefore, Sola was able to avoid spending time to keep any

co-counsel abreast of all the facts, law, and developments in

this matter.  At the same time, as many as three attorneys were

working on Equifax's defense.  Furthermore, Sola attests he wrote

down his time entries to eliminate "scores of consultations about

issues in the case in the last five years with attorney Michael

Baxter, who has substantial experience in FCRA cases.  Plaintiff

contends the timing of depositions ultimately does not alter the

time spent and the costs incurred; *i.e.*, whether they occurred in

2007 or 2009 makes little difference in the amount of costs.

Plaintiff's counsel also note Plaintiff cannot recover fees

for expert witnesses and has not sought to recover any such fees

in the Bill of Costs.  Thus, Plaintiff contends she could not

drive up costs by retaining the experts who she needed at trial

to prove her damages.

The Court does not find Equifax's arguments persuasive in light of the detailed explanation of Plaintiff's counsel as to the significant work required for counsel to be prepared for depositions in this matter.  Moreover, there is not any indication in this record that Plaintiff's counsel were intentionally or improvidently increasing time and costs in this matter, and, therefore, the Court does not see any basis to reduce the amount of time that counsel expended on that ground. Accordingly, the Court concludes the time that Plaintiff's counsel expended on this matter was reasonable.

**F.   Plaintiff's lack of success.**

Equifax contends the Court should make an overall reduction in the fee award of "50% or more" to account for Plaintiff's "minimal level of success" in her settlement with Equifax. Equifax points out that the settlement amount was significantly lower than the amount Plaintiff sought in damages: for example, Plaintiff stated in her responses to Interrogatories that she suffered actual losses in excess of one million dollars and also was seeking punitive damages against Equifax.  Thus, Plaintiff's $275,000 recovery represents only a fraction of the total damages sought.

Plaintiff, however, asserts her response to Equifax's Interrogatory represented her "total" out-of-pocket losses rather

23 - OPINION AND ORDER

than those attributable only to Equifax.  Thus, Plaintiff's
eventual settlement with Equifax cannot be viewed in a vacuum as
the sole means of redress for Plaintiff in this matter.
Moreover, Plaintiff noted in her responses to Equifax's
Interrogatories that her damages were difficult to value because,
*inter alia*, she lost appreciation in a residential property in
addition to the opportunity to become a 20% partner in an LLC.
Plaintiff's counsel acknowledged the difficult factual and legal
hurdles to proving the loss of a partnership opportunity in an
LLC, but they note Plaintiff was required to list that potential
damage theory in her response to avoid being precluded from
raising it later.  In any event, Plaintiff did not set out a
specific damages amount in her Second Amended Complaint.

    Plaintiff also asserts she was ultimately successful by
securing a judgment against Equifax that few settling plaintiffs
obtain:  This settlement agreement did not contain provisions in
which the defendant denies any fault or wrongdoing.  Moreover,
none of Plaintiff's claims were dismissed before settlement, and,
therefore, despite Equifax's argument to the contrary, Plaintiff
asserts she succeeded on her claim for punitive damages even
though the settlement agreement does not distinguish between
types of damages.  Plaintiff's counsel also note the settlement
amount significantly exceeds the two verdicts previously reached
against Equifax in the District of Oregon:  *Kirkpatrick v.*

*Equifax Information Services LLC*, Case No. CV-02-1197-MO, with a verdict of $210,000 in damages in 2005, and *Valentine v. Equifax Information Services LLC*, Case No. 05-CV-0801-JO, with a verdict of $200,000 in damages in 2007.  Plaintiff's counsel also point to a recent Fourth Circuit verdict against Equifax that was less than Plaintiff's settlement award:  *Robinson v. Equifax Info. Svcs., LLC*, 560 F.3d 235 (4th Cir. 2009) ($200,000).  Moreover, Plaintiff's counsel state they are aware of only one case against Equifax in which a plaintiff was awarded more than Plaintiff secured in her settlement (*i.e.*, the Florida matter in which Plaintiff's counsel secured $2.7 million in punitive damages and $219,000 in actual damages).

Finally, Plaintiff points out that in addition to being spared the risk and expense of trial and any potential appeal, the settlement agreement provided for attorneys' fees so that Plaintiff is not required to pay those fees out of her settlement amount.

In summary, when the Court considers this matter as a whole and compares it to other FCRA matters that were tried to juries, Plaintiff's award is significant.  The Court, therefore, does not find Equifax's argument to be a legitimate basis for finding the time Plaintiff's counsel expended was unreasonable.

**G.  Additional *Kerr* factors.**

Plaintiff's counsel also identify several additional

*Kerr* factors that support the reasonableness of their fee
request.  Plaintiff's counsel note there are very few Oregon
lawyers who specialize in litigating FCRA matters due to the
serious financial risk assumed by counsel in FCRA matters, which
are customarily contingency-fee cases.  For example, Plaintiff's
counsel worked on this matter for nearly six years before
receiving any compensation.  Plaintiff's counsel contends these
factors make these kinds of cases undesirable for most attorneys.

Plaintiff's counsel also detail the complexity of this
particular matter.  Sola attested:

> This case was unequivocally the most
> complicated and difficult FCRA case I have
> handled in my 15 years doing these cases.
> The events related to plaintiff's credit
> reports covered a period of more than 25
> years.  They began in the early 1980s when
> she became a victim of identity theft and
> extended all the way through the present.
>
> There were events during almost every
> one of those years that affected her credit
> report.  The identity thief would continue to
> open accounts that would get placed on
> plaintiff's credit reports; or existing
> accounts would become delinquent and be sent
> to collection agencies that would report the
> accounts to Equifax causing them to appear on
> plaintiff's credit reports.  Plaintiff
> repeatedly disputed information with Equifax
> throughout this period.
>
>                     * * *
>
> There were an extraordinary number of
> persons, businesses and potential witnesses
> involved in this case.  These included
> plaintiff; her husband, daughter and son; her
> best friend; Equifax's corporate

26 - OPINION AND ORDER

representatives and employees; three law
enforcement officers; an SSA employee; loan
officers; furnishers of information regarding
plaintiff; collection agencies; hospitals;
mortgage companies; banks; credit card
companies; resellers of credit reports;
plaintiff's husband's LLC; plaintiff's
restaurant business; and the identity thief.

* * *

The task confronting me in this case was
enormous.  I had to review and understand the
thousands of pages of documents in the case,
learn all the facts covering a period of more
than 20 years, determine every violation of
the FCRA that was supported by the facts, and
uncover all the damages and evidence
supporting those damages.  Then I had to
organize and distill all this information so
it could be presented to a jury.

* * *

This case presented novel and difficult
questions on both the law and the facts.  I
have never confronted a case of this
magnitude.  One novel issue was that
plaintiff had two SSN's.  Neither I, nor
Equifax's counsel to my knowledge, had ever
handled a case where a consumer had two
SSN's.  This gave plaintiff two identities in
the eyes of Equifax. Plaintiff stopped using
her old SSN in the 1990's but it would still
appear on some of her credit accounts and in
Equifax's files on her.  The two SSN's made
the case difficult.  Both belonged to
plaintiff but the old one had been used
fraudulently and Equifax was aware of that.
This raised the novel issue of how Equifax
should handle the old SSN and information
reported with the old SSN.

Plaintiff had three different names.
Her maiden name was Garza which was the name
used by the identity thief. She was married
and changed her last name to Blevins.  She
was divorced and later remarried and changed

27 - OPINION AND ORDER

her last name to Jansen.  This made the case
more difficult because although her name had
been Garza, that name was now associated with
the identity thief.  An important and complex
issue was how Equifax treated information
linked to the name Michelle Garza.

* * *

Equifax recognized the novel and
difficult issues in the case by hiring two
expert witnesses.  I am not aware of any
other case where Equifax has hired expert
witnesses, including the three cases
involving me or Mr. Baxter that went to
trial.

Plaintiff's counsel asserts the foregoing demonstrates the time
and labor they expended on this matter was reasonable.  Equifax
does not specifically refute Plaintiff's arguments regarding
these additional *Kerr* factors.

In summary and in the exercise of its discretion, the Court
concludes on this record that Plaintiff's requested attorneys'
fee award is reasonable except as modified or reduced herein.
The Court, therefore, grants as modified Plaintiff's initial
Motion (#159) for Attorney Fees and awards $284,543.75 to
Plaintiff.


### PLAINTIFF'S MOTION (#191) TO SUPPLEMENT ATTORNEY FEES

Plaintiff requests supplemental attorneys' fees in the
amount of $16,880 for 42.2 hours of work performed by Sola
between April 22, 2010, and July 1, 2010.  Sola spent the bulk of
those hours reviewing and preparing briefs in response to

28 - OPINION AND ORDER

Equifax's Motion to Compel.  To support this Motion, Plaintiff's counsel provide the Declaration of Robert Sola, which includes counsel's specific billing entries for the relevant period.

Equifax repeats its argument that Sola's hourly rate of $400 is unreasonable.  Because the Court has already concluded Sola's rate is reasonable, it is unnecessary to address this argument.

Equifax also contends certain billing entries by Plaintiff's counsel are excessive:  (1) $1,760 for over four hours of legal research, (2) 2.3 hours to review Equifax's Opposition to Plaintiff's Motion for Attorney Fees, and (3) $4,200 for over ten hours spent on drafting a Reply in support of Plaintiff's Motion for Attorney Fees.  Equifax also contends Plaintiff did not prevail on Equifax's Motion to Compel and, therefore, should not be awarded attorneys' fees for those hours expended on challenging that Motion.

## I.   Time to Perform Legal Research to Oppose Equifax's Motion to Compel.

Equifax raised a difficult legal issue in its Motion to Compel that has not been clearly addressed by the Ninth Circuit: whether production of confidential settlement agreements may be compelled to prevent double recovery of attorneys' fees.  The Court, therefore, does not find that time Plaintiff's counsel spent performing legal research to challenge Equifax's Motion to Compel is excessive.

29 - OPINION AND ORDER

## II.  Time to Review Equifax's Response to Plaintiff's Motion for Attorney Fees.

Equifax asserted numerous bases to support its position that the Court should reduce the amount of Plaintiff's requested attorneys' fees and submitted 145 pages of briefing and supporting materials with its Response.  Accordingly, the Court does not find the time Plaintiff's counsel spent reviewing Equifax's Response is excessive.

## III. Time to Draft Plaintiff's Reply in Support of her Motion for Attorney Fees.

Plaintiff's counsel meticulously responded to the factual and legal arguments in Equifax's Response to Plaintiff's Motion to Plaintiff's Motion for Attorney Fees, provided clear and concise analyses, and presented their arguments in a logical and structured manner in their 16-page Reply.  On this record the Court does not find any basis to conclude the time that Plaintiff's counsel expended to draft Plaintiff's Reply was excessive.

## IV.  Plaintiff Only Partially Prevailed on Equifax's Motion to Compel.

Equifax also contends Plaintiff did not prevail on the Motion to Compel Production of Settlement and Attorney Fee Information and, therefore, Plaintiff should not be awarded attorneys' fees for the time that Plaintiff's counsel spent in opposing Equifax's Motion to Compel.  As noted, even though the

Court denied Equifax's request for production of Plaintiff's confidential settlement agreements with other Defendants in this matter, the Court granted Equifax's request for production of the "source" billing records from which Plaintiff's counsel determined the number of hours they expended as to Plaintiff's claims against Equifax only.  Thus, the Court agrees Plaintiff was only partially successful in opposing Equifax's Motion to Compel.  In the exercise of its discretion, therefore, the Court concludes on this record that Plaintiff's supplemental request for attorneys' fees should be reduced by 30% to $11,816.

## PLAINTIFF'S SECOND MOTION (#206) TO SUPPLEMENT ATTORNEYS' FEES

Plaintiff requests supplemental attorneys' fees in the amount of $5,840 for 14.6 hours of work performed by Sola between July 6, 2010, and October 27, 2010.  To support the Motion, Plaintiff's counsel submit the Declaration of Sola, which includes billing entries for the relevant period.

Plaintiff's counsel spent time, *inter alia*, preparing billing records for Equifax in accordance with the Court's Order issued on August 8, 2010.  Plaintiff's counsel, however, state they reduced or did not charge for a number of tasks that were necessarily performed.  Equifax also challenges the hourly rate of Plaintiff's counsel, but, as noted, the Court already has addressed that issue.

31 - OPINION AND ORDER

In any event, Equifax contends Plaintiff's counsel should not be granted attorneys' fees for time spent complying with the Court's Order to produce the billing records necessary to allow Equifax to determine the method by which Plaintiff's counsel arrived at the number of hours they spent on Plaintiff's claims against Equifax.  The Court agrees.  The Declaration of Robert Sola reveals Plaintiff's counsel spent 5.3 hours reviewing and preparing billing records to comply with the Court's Order.  The Court concludes on this record that those hours are unreasonable and, accordingly, denies in part Plaintiff's second supplemental request for attorneys' fees for the 5.3 hours requested by Plaintiff.  Thus, the Court reduces Plaintiff's second supplemental request for attorneys' fees by $2,120.

Equifax also repeats its argument that the time expended by Plaintiff's counsel with respect to the Motion to Compel should be reduced to account for the fact that Plaintiff was only partially successful in her opposition to Equifax's Motion to Compel.  In accordance with the Court's analysis above and in the exercise of the Court's discretion, the Court reduces the remaining 9.3 hours expended by 30% to account for time spent unsuccessfully opposing the Equifax's Motion to Compel.  Accordingly, the Court further reduces Plaintiff's second supplemental request for attorneys' fees by $1,120.  Thus, the Court finds Plaintiff's counsel reasonably expended 6.5 hours

with respect to Plaintiff's Second Motion to Supplement Attorney
Fees and, therefore, is entitled to attorneys' fees of $2600.

## PLAINTIFFS' BILL OF COSTS (#165)

### Standards

As noted, the settlement agreement between Plaintiff and
Equifax provides for attorneys' fees and costs not to exceed
$325,000.  Costs generally are awarded to the prevailing party in
a civil action as a matter of course unless the court directs
otherwise.  Fed. R. Civ. P. 54(d).  The court must limit an award
of costs to those defined in 28 U.S.C. § 1920 unless otherwise
provided for by statute.  *Grove v. Wells Fargo Fin. Ca., Inc.*,
606 F.3d 577, 579-80 (9th Cir. 2010).  *See also Haagen-Dazs Co.,
Inc. v. Double Rainbow Gourmet Ice Creams, Inc.*, 920 F.2d 587,
588 (9th Cir. 1990)(citing *Crawford Fitting Co. v. J.T. Gibbons,
Inc.*, 482 U.S. 437, 441-42 (1987)).  In addition, FCRA "permits a
prevailing plaintiff to recover 'the costs of the action together
with reasonable attorney's fees as determined by the court.'"
*Grove*, 606 F.3d at 580 (quoting 15 U.S.C. § 1681o(a)(2).

### Discussion

Plaintiffs seek a total of $13,894.35 in costs:  $13,381.57
for printed or electronic copies of transcripts "necessarily
obtained for use in the case", $250 for fees of the Clerk,
$182.78 for service of summonses and subpoenas, and $80 for

33 - OPINION AND ORDER

printing costs.  Plaintiff's counsel provide receipts to substantiate their costs.

Equifax contends Plaintiff has requested an award for costs that are either excessive or are not solely attributable to Plaintiff's claims against Equifax.  Specifically, Equifax contends Plaintiff is not entitled to (1) $250 filing fee for the Complaint; (2) costs for service of process ($28 for service on GMAC, $86.78 for service on Informative Research, and $40 for service on Stores National Bank); (3) costs of certain lay-witness deposition transcripts ($943 for Michelle Jansen Volume I and $956.25 for Volume II; $865.75 for Frank Wynns; $1,756.50 for Margaret Leslie; $2,013.10 for Alicia Fluellen; $468.25 for Lee Lovvorn; and $1,122 for Philip McLain, Kathleen Burbey, Michael Oporto, and Amanda Blevins); (4) $2,023.50 for depositions of expert witnesses (Evan Hendricks, Robert Gill, Troy Mulijat, Blake Runckel, and Dean Jansen); and (5) $885 for appearance fees (Valerie Parks, Philip McLain, Michael Oporto, Kathy Burbey, Don Blevins, Dave Amster, and Marcus Asner).  In particular, Equifax maintains these costs were unnecessary because neither the depositions nor the court proceedings were pertinent to any dispositive motions nor to trial.  Furthermore, Equifax requests the Court to apportion the costs by taxing Equifax an amount equal to its share after taking into consideration the other parties who were Defendants in the case at the time the costs

were incurred.  Thus, Equifax contends the maximum the Court should award Plaintiff in costs is $4,277.94.

**I.    Filing Fee.**

Equifax contends it should only be taxed for one-fourth of Plaintiff's filing fee because there were four Defendants in the case initially.  Equifax does not cite any legal support for their contention.

Plaintiff argues the cost to Equifax would be the same if Equifax had been the only Defendant.  Sola attests the settlement agreements with Trans Union and Experian either require the parties to bear their own costs or do not otherwise refer to costs.  Thus, the filing fee is properly taxed against Equifax in its entirety under § 1920.

Because there does not appear to be any authority to apportion the filing fee among the various Defendants in the circumstances of this case, the filing fee would have been taxed against Equifax if it had been the only defendant, and there is not any evidence that Plaintiff has recovered the cost of the filing fee, the Court, in the exercise of its discretion, taxes the entire filing fee against Equifax.

**II.  Costs for Service of Subpoenas.**

Equifax contends the costs for service of subpoenas on GMAC, Informative Research, and Stores National Bank should be apportioned among each party who was a Defendant in the case at

35 - OPINION AND ORDER

the time of service.

Plaintiff repeats her argument that Equifax would bear these costs even if it were the only Defendant and that the fees are properly taxed against Equifax under § 1920.  In addition, Plaintiff asserts these costs were not recovered from Trans Union or Experian.  Plaintiff, however, has not shown that the service of subpoenas on GMAC, Informative Research, or Stores National Bank were related to the claims against Equifax.  The Court, therefore, in the exercise of its discretion, declines on this record to tax Equifax $154.78 for service of these subpoenas.

**III. Lay-Witness Deposition Transcript Costs.**

Equifax contends the deposition transcripts of lay witnesses Jansen, Wynns, Leslie, Fluellen, Lovvorn, McLain, Burbey, Oporto, and Amanda Blevins were not necessary for dispositive motions or for trial and should not be recoverable by Plaintiff.  Equifax does not provide any particular explanation as to the role of each of these witnesses and, therefore, why each particular deponent's transcript was unnecessary.  Even if these costs are recoverable, Equifax again argues it should only be taxed for its proportional share of the costs based on the number of Defendants in the case at the time the depositions were taken.  Equifax, however, does not identify any deposition witnesses whose testimony was not relevant to Plaintiff's claims against Equifax.

A court may tax "[f]ees of the court reporter for all or any

36 - OPINION AND ORDER

part of the stenographic transcript necessarily obtained for use
in the case."  28 U.S.C. § 1920(2).  *See also* Fed. R. Civ. P.
54(d)(1).  The fact that the deposition transcripts were not
ultimately used in dispositive-motion practice or at trial is not
sufficient to automatically render the transcripts unnecessary.
*See Aflex Corp. v. Underwriters Lab., Inc.*, 914 F.2d 175, 177
(9th Cir. 1990)(Transcripts of depositions and court proceedings
need not have been used at trial to be "necessarily obtained for
use in the case.").

Here Plaintiff contends she had to prepare during discovery
for potential dispositive motions as well as for trial without
knowing whether either would occur.  Plaintiff notes she used the
deposition transcripts to prepare for trial, and this matter was
settled on the eve of trial.  In any event, Plaintiff reiterates
the deposition transcripts need not be indispensable, but need
only be "reasonably necessary" to prepare for trial.  28 U.S.C.
§§ 1920(2), 1920(4).  Plaintiff notes her deposition transcripts
were necessary because she was the central trial witness.
Leslie, Fluellen, and Lovvorn were each Equifax witnesses, and
Plaintiff contends their deposition transcripts were necessary to
prepare for impeachment and cross-examination.  Plaintiff
contends the deposition transcripts of Wynns, Oporto, McLain, and
Blevins were necessary because the witnesses were beyond the
subpoena power of the Court and Plaintiff intended to read parts

37 - OPINION AND ORDER

of their testimony at trial.  Plaintiff also contends the
deposition transcript of Kathleen Burbey was necessary to prepare
for trial because she was listed as a trial witness.

In light of the length and complexity of this case, the
Court concludes on this record that it was reasonable for
Plaintiffs to obtain these transcripts for use at various stages
in the litigation.  Thus, the Court, in the exercise of its
discretion, taxes against Equifax the costs for the lay-witness
depositions.

**IV.  Expert-Witness Deposition Transcript Costs.**

Equifax also contends the deposition transcript costs for
Plaintiff's expert witnesses should not be taxed against Equifax.
Equifax repeats the fact that Plaintiff's expert deposition
transcripts were not used in any dispositive motion or at trial.
As noted, this argument is not dispositive.  Equifax, however,
also contends the pursuit of speculative damages through reliance
on these experts did not add any value to Plaintiff's claims.

Plaintiff emphasizes it was Equifax that requested the
depositions of Plaintiff's experts.  Plaintiff also asserts the
transcripts were necessary to permit her experts to review them
for errors and to prepare the witnesses for cross-examination at
trial.

The Court concludes the transcript for Plaintiff's FCRA
expert, Evan Hendricks, was reasonably necessary to prepare for

38 - OPINION AND ORDER

trial and to respond to Equifax's experts.  Thus, in the exercise of its discretion, the Court taxes costs of $622.00 against Equifax for the deposition transcripts of Evan Hendricks.

Plaintiff, however, conceded in her Reply that the damages associated with Plaintiff's lost opportunity to become a member of an LLC were speculative and were not sought in Plaintiff's Second Amended Complaint.  Plaintiff also acknowledges there were "serious questions" as to whether FCRA even allowed her to pursue such damages.  Furthermore, Plaintiff learned the damages associated with the lost appreciation in a home in Bend, Oregon, could not be pursued.  Thus, Plaintiff has not demonstrated the necessity of obtaining the deposition transcripts pertinent to recovery of these damages in light of the minimal chance of success on those damage theories.

Accordingly, the Court agrees with Equifax that deposition transcript expenses associated with Plaintiff's valuation experts ($746.25 for Robert Gill and Troy Muljat and $655.25 for Blake Runckel and Dean Jansen) were unnecessary in light of Plaintiff's awareness that such damages were either untenable or speculative. Thus, in the exercise of its discretion, the Court declines to tax Equifax $1,401.50 in costs for deposition transcripts of Plaintiff's valuation experts.

**V.  Appearance Fees.**

Equifax also contends § 1920 does not provide for

39 - OPINION AND ORDER

Plaintiff's taxation of costs in the sum of $885 for the court-reporter appearance fees at the depositions of witnesses Valerie Parks, Philip McLain, Michael Oporto, Kathleen Burbey, Don Blevins, Dave Amster, and Marcus Asner.

Plaintiff counters that even if § 1920 does not provide for the cost of appearance fees, the FCRA fee-shifting provisions permit the Court to tax any litigation expenses that attorneys bill as costs to their clients separate from their hourly rates. In *Grove*, the Ninth Circuit held:

> Consistent with *Jenkins*, we repeatedly have allowed prevailing plaintiffs to recover non-taxable costs where statutes authorize attorney's fees awards to prevailing parties. In *Davis v. San Francisco*, we affirmed an award of non-taxable costs under an expense-shifting statute providing that "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee." *Id*. at 1541 (quoting 42 U.S.C. § 2000e-5(k)). In doing so, we noted that, "the courts have long held [that certain non-taxable costs] can be awarded as part of a reasonable attorneys' fee since they are typically charged to paying clients by private attorneys." *Id*. at 1556. Similarly, in *Davis v. Mason County*, 927 F.2d 1473 (9th Cir. 1991), we affirmed an award of travel expenses under a statute providing district courts with discretion to allow the prevailing party reasonable attorney's fees as part of the costs of the action.

*Grove*, 606 F.3d at 580-82 (discussing at length the decisions of the Ninth Circuit and other circuit courts that support the conclusion that the statutory provisions for "attorneys' fees" permits recovery of costs that are not taxable under § 1920 but

40 - OPINION AND ORDER

are, nonetheless, billed to the client separate from the attorneys' hourly rates).

The Court agrees with Plaintiff and concludes the appearance fees are taxable under the FCRA fee-shifting provisions even if § 1920 does not specifically provide for taxation of such costs. Accordingly, in the exercise of its discretion, the Court taxes Equifax for the appearance fees for the above-referenced witnesses.

In summary, the Court reduces Plaintiffs' request for costs by $1,556.28 and awards costs to Plaintiffs in the amount of $12,338.07.

## CONCLUSION

For these reasons, the Court **GRANTS in part** and **DENIES in part** Plaintiff's Motions (#159, #191, #206) for Attorney Fees and awards attorneys' fees to Plaintiff in the sum of **$298,959.75**. The Court also **GRANTS in part** and **DENIES in part** Plaintiff's Bill of Costs (#165) and awards costs to Plaintiff in the amount of **$12,338.07.**[4]

IT IS SO ORDERED.

DATED this 9th day of March, 2011.

/s/ Anna J. Brown

_____

[4] The attached Exhibit A summarizes the Court's calculation of attorneys' fees and costs.

41 - OPINION AND ORDER

ANNA J. BROWN
United States District Judge